UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETFLIX, INC., <br>              Plaintiff, <br>       v. <br> BROADCOM INC., et al., <br>              Defendants. | Case No.  25-cv-03738-TLT <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** <br> Re: Dkt. No. 43, 72 |

The parties to this litigation are no strangers; they have been involved in patent litigation against one another for years. In the instant action, Plaintiff Netflix, Inc. ("Plaintiff") alleges that Defendants Broadcom Inc. and VMware LLC (collectively, "Defendants") have infringed five software patents Plaintiff acquired last November.

Pending before the Court is Defendants' motion to dismiss Netflix's first amended complaint, alleging that the asserted claims of each of the five patents is not patent-eligible under 35 U.S.C. § 101. For the reasons that follow, the Court **GRANTS** defendants' motion to dismiss with leave to amend.

**I.    BACKGROUND**

    **A.    Procedural History**

On April 29, 2025, Plaintiff Netflix, Inc. filed a complaint against Broadcom, Inc. and VMware, LLC for patent infringement in violation of patent laws arising out of 35 U.S.C. § 1, *et seq*. ECF 1. On May 22, Plaintiff filed an amended complaint against Defendants. ECF 25.

On July 7, 2025, Defendants filed a motion to dismiss the amended complaint. ECF 43. Plaintiff filed a timely response on August 4, 2025. ECF 53. On August 25, 2025, Defendants timely replied. ECF 55. The Court held a hearing on Defendants' motion to dismiss on October 21, 2025. ECF 67.

### B. Factual Background

Netflix is a video streaming service company which provides entertainment services to 278 million of its members. ECF 25 ¶ 6 ("FAC"). Broadcom is an amalgamation of technology companies which merged with VMware Inc. in November 2023. *Id.* ¶ 9.

Between 2020 and 2021, a few Broadcom entities sued Netflix for patent infringement in this District. *Broadcom Corp. v. Netflix, Inc.*, No. 3:20-cv-4677, (N.D. Cal. Nov. 12, 2024); *Netflix, Inc. v. CA, Inc. d/b/a CA Technologies et al.,* No. 3:21-cv-03649 (N.D. Cal.). ECF 43 at 1.

On November 25, 2024, Plaintiff acquired several U.S. patents including U.S. Patent Nos. 10,331,472 (the "'472 Patent"), 7,313,102 (the "'102 Patent"), 7,649,912 (the "'912 Patent"), 7,447,931 (the "'931 Patent"), and 7,656,751 (the "'751 Patent"). FAC ¶ 2. Thereafter, a volley of holiday and Spring filings ensued.

On December 23, 2024, Plaintiff filed a case for patent infringement against Defendants for five different patents purchased on November 25, 2024. ECF 43 at 2. On the same day, Plaintiff sent a letter to Defendants alleging infringement of the '472 Patent, the '102 Patent and the '912 Patent. *Id.* at 2–3.

After Defendants had filed a motion to dismiss the lawsuit initiated on December 23, 2024, Plaintiff filed this lawsuit on April 29, 2025 asserting infringement of the three patents identified in the letter. *Id.* at 3. On May 22, 2025, prior to Defendants' response to this suit, Plaintiff amended the complaint to allege infringement of the '931 Patent and the '751 Patent. ECF 25.

Plaintiff alleges that Defendants' virtualization products ("Broadcom Load Balancing Accused Products" and "Broadcom Subnet Provisioning Accused Products", respectively) and ethernet switching products (the "Broadcom Switching Accused Products") infringe the five patents listed above. *Id.* ¶¶ 93, 97.

#### 1. U.S. Patent No. 10,331,472 (the "'472 Patent")

The '472 Patent, entitled "Virtual Machine Service Availability," was issued from the United States Patent and Trademark Office ("USPTO") on June 25, 2019. FAC. ¶ 18. Bo Wang is identified as the inventor of the '472 Patent. *Id.* Plaintiff is the current owner of the '472 Patent. *Id.*

2

The '472 Patent teaches a method for "monitoring" availability of a first service to "detect[]" a reduction in availability of the service, and then reallocates resources, "creating capacity for the first service by deactivating a second service," and "activating a second active virtual machine executing the first service." *Id.* ¶ 26. Plaintiff claims that the '472 Patent, "enhances overall service availability without additional hardware costs while limiting required redundancy and increasing cost efficiency in resource usage and allocation of a server network, thereby improving the performance of virtual machine systems." *Id.* ¶ 25.

The amended complaint alleges infringement of "at least" claims 6–10 of the '472 Patent.

### 2. U.S. Patent No. 7,313,102 (the "'102 Patent")

The '102 Patent, entitled "System and Method for Subnet Configuration and Selection," was issued from the USPTO on December 25, 2007. *Id.* ¶ 19. Bryan Craig Stephenson, Jennifer Jie Fu, Julie Kosakowski, Samuel L. Scarpello, Jr., Andrea Eakin, Jon Russell Sawyer, Rheid Schloss, and Ron MacDonald are identified as the inventor of the '102 Patent. *Id.* Plaintiff is the current owner of the '102 Patent. *Id.*

The '102 Patent teaches an improved method of subnetwork (or "subnet") management within network infrastructures, and an improved method for provisioning subnets. *Id.* ¶ 34. Specifically, the '102 Patent describes a method for "constrained selection" which "permit[s] selection only from suitable subnets that meet defined network requirements." ECF 53 at 10. The '102 Patent claims that preexisting "tools to manage IP address spaces have various problems and disadvantages," which "may be overcome by utilizing embodiments of the ['102 Patent] invention." '102 Patent, 1:29-31, 1:49-51.

The amended complaint alleges infringement of "at least" claims 1–3 and 5–12 of the '912 Patent.

### 3. U.S. Patent No. 7,447,931 (the "'931 Patent") and U.S. Patent No. 7,656,751 (the "'751 Patent")

The '931 Patent, entitled "Step Time Change Compensation in an Industrial Automation Network," was issued from the USPTO on November 4, 2008. *Id.* ¶ 21. Charles M. Rischar,

3

1  Kendal R. Harris, and Mark Chaffee are identified as the inventor of the '931 Patent. *Id.* Plaintiff
2  is the current owner of the '931 Patent. *Id.*
3    The '751 Patent, entitled "Step Time Change Compensation in an Industrial Automation
4  Network," was issued from the USPTO on February 2, 2010. *Id.* ¶ 22. Charles M. Rischar,
5  Kendal R. Harris, and Mark Chaffee are identified as the inventor of the '751 Patent. *Id.* Plaintiff
6  is the current owner of the '751 Patent. *Id.*
7    The '931/'751 Patents are directed to improvements to "time synchronization technology"
8  that "compensat[e] for system step changes across a network of distributed devices in order to
9  accurately represent time." *Id.* ¶¶ 64, 78. The patents explain that a "step change" in the master
10 clock is when "the clock is changed manually, the clock loses the time reference satellite for a
11 given time period, etc." '931 Patent, 2:12-15. Plaintiff alleges the claims address this networking
12 problem by "improv[ing] the precision and performance of time synchronization in networked
13 systems using the IEEE 1588 protocol . . . specifically when there is a 'step change' in the master
14 clock in a master-slave node architecture. *See Id.* ¶¶ 64-66, 78-80.
15   The amended complaint alleges infringement of "at least" claims 27–32 of the '931 Patent
16 and claims 1–14 of the '751 Patent.

17     **4. U.S. Patent No. 7,649,912 (the "'912 Patent")**

18   The '912 Patent, entitled "Time Synchronization, Deterministic Data Delivery and
19 Redundancy for Cascaded Nodes on Full Duplex Ethernet Networks," was issued from the
20 USPTO on January 19, 2010. *Id.* ¶ 20. Sivaram Balasubramanian, Anatoly Moldovansky, and
21 Kendal R. Harris are identified as the inventor of the '912 Patent. *Id.* Plaintiff is the current
22 owner of the '912 Patent. *Id.*
23   The '912 Patent enables real-time correction of timestamps at intermediate nodes by
24 recalculating those integrity mechanisms to prevent corruption. *See* '912 Patent, 2:7-47, 6:9-12,
25 7:21-55; FAC ¶¶ 49, 60-62. In other words, when a message is sent providing the current time and
26 there is delay in forwarding that message the '912 Patent accounts for and corrects the timestamp
27 reflecting the delay. *Id.* The '912 Patent utilizes the IEEE 1588 standard—which, in 2002,
28 established a basic framework for the Precision Time Protocol (PTP)—and proposes a technique

4

for improving the synchronization of clocks in networked nodes by addressing delays through timestamp adjustments, prioritizing time synchronization frames for transmission, and ensuring reliable data delivery paths, particularly in industrial control and motion control applications using full duplex Ethernet networks. *Id.* ¶¶ 45–48.

The amended complaint alleges infringement of "at least" claims 1–11 of the '102 patent, Patent.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Rule 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To overcome a motion to dismiss, a plaintiffs' "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). Courts may dismiss claims that lack "sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted).

The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

### B.   Motion to Dismiss for Patent Eligibility Challenges Under 35 U.S.C. § 101

Patent eligibility under Section 101 is a threshold issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Although the inquiry may contain underlying issues of fact, patent eligibility is ultimately a question of law. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Thus, the issue of patent eligibility under Section 101 may be resolved by way of a motion to dismiss. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019). However, dismissal at this stage is appropriate "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Id.* (quoting *Aatrix Software, Inc. v. Green*

*Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)); *see also Cooperative Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022) (patent eligibility "may be resolved at the Rule 12 stage only if there are no plausible factual disputes after drawing all reasonable inferences from the intrinsic and Rule 12 record in favor of the non-movant.")

"If there are claim construction disputes at the Rule 12(b)(6) stage," the Court "must proceed by adopting the non-moving party's constructions," or the Court "must resolve the disputes to whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction." *Aatrix Software, Inc.*, 882 F.3d at 1125.

"A plaintiff is not required to plead infringement on an element-by-element basis." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021) (citing *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)). However, in patent cases, "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the [patent] claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC*, 4 F.4th at 1353 (Fed. Cir. 2021). "There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.* at 1353.

**C.   Patent Eligibility Under 35 U.S.C. § 101**

Under Section 101, patent-eligible subject matter includes "any new or useful process, machine, manufacture, or composition of matter, or any new or useful improvement thereof." *Bilski*, 561 U.S. at 601 (quoting 35 U.S.C. § 101). However, Section 101 "contains an important implicit exception: [l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. V. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)).

To determine patent eligibility, the Supreme Court articulated a two-step analysis in *Mayo Collaborative Servs. v. Prometheus Lab'ys Inc.*, 566 U.S. 66 (2012) and further delineated in *Alice*, 573 U.S. at 217. In step one, the Court "determine[s] whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 573 U.S. at 217. "At step one . . . , we 'look at the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter.'" *See Koninklijke KPN N.V. v. Gemalto M2M*

*GmbH*, 942 F.3d 1143, 1149 (Fed. Cir. 2019). "Abstract ideas" are excepted from patent protection under 35 U.S.C. § 101. *Id.* at 216. If the claims are directed to a patent-ineligible concept, then moving to step two, the Court begins the "search for an 'inventive concept'—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 573 U.S. at 217–218 (quoting *Mayo*, 566 U.S. at 72-73).

## III. DISCUSSION

### A. The Court Proceeds to the § 101 Analysis Despite Plaintiff's Claims Constructions

As a threshold matter, this Court may "defer the § 101 analysis until after claim construction when a patentee identifies terms requiring construction and explains how resolution of construction disputes is material to resolving the § 101 challenge. *Khn Sols. Inc. v. Vertisense Inc.*, No. 16-cv-00962, 2016 WL 5725013, at *2 (N.D. Cal. Sept. 30, 2016). Plaintiff offers claims constructions for the '102 Patent and for the '931/'751 Patents which Plaintiff's argue are material to resolving this motion. ECF 53 at 9, 14–15.

Assessing patent eligibility requires only "a full understanding of the basic character of the claimed subject matter," and "claim construction is not an inviolable prerequisite to a validity determination." *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014). Here, the Court finds that the proposed constructions on pages 9 and 14–15 are not outcome determinative, nor are the constructions needed to understand the basic character of the claimed subject matter. *Id.*

Moreover, the Court rejects Plaintiff's contention that Plaintiff should be granted leave to incorporate its expert declarations for purposes of this motion. *See Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1585 (Fed. Cir. 1996) (expert opinions on claim interpretation "may only be relied upon if the patent documents, taken as a whole, are insufficient to enable the court to construe disputed claim terms", and "[s]uch instances will rarely, if ever, occur"). Plaintiff has not made this showing.

Accordingly, the Court proceeds to the § 101 analysis below.

7

**B.     Claims 6 of the '472 Patent is Invalid Under 35 U.S.C. § 101.**

Plaintiff's operative complaint contains factual allegations detailing how Defendants' Accused Products infringe claim 6 of the '472 Patent. *See generally* FAC. Plaintiff states that the remaining dependent claims recite additional limitations of the claimed invention. FAC ¶¶ 28–31.

As discussed above "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). Such pleading requirements ensure that Defendants are fairly "on notice of what activity . . . is being accused of infringement" with respect to the allegedly unique claims. *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 42 (Fed. Cir. 2024). Thus, in patent cases, courts are permitted to analyze representative claims. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (upholding district court's analysis that used representative claim); *see also Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029, 1041–42 (N.D. Cal. 2023) (treating the first claim of each asserted patent as representative for Section 101 purposes where plaintiff "mapped . . . only the first claim of each asserted patent [] in the complaint").

Accordingly, "because the operative complaint fails to plead facts to plausibly allege infringement of any claims of the [asserted] patents beyond [the claims addressed below], the Court need not resolve the dispute about representativeness [of other claims] at this time." *Netflix, Inc. v. Broadcom Inc.*, No. 5:24-cv-09324, (N.D. Cal. June 6, 2025).

//

//

//

//

### 1. Claim 6 of the '472 Patent is Directed to a Patent-Ineligible Subject Matter

Claim 6 of the '472 reads as follows:

| '472 Patent |
|---|
| 6. A method comprising: |
| monitoring a first availability of a first service, the first service having a first availability requirement and a first availability tolerance; |
| detecting a reduction in the first availability of the first service; |
| creating capacity for the first service by deactivating a second service on a first active virtual machine on a server, the second service having a second availability exceeding a second availability tolerance and having a second availability requirement lower than the first availability requirement; and |
| activating a second active virtual machine executing the first service on the server. |

Defendants argue that the improvement described in the '472 Patent is nothing more than an abstract objective, and method for allocating resources and cost management. ECF 55 at 2. Plaintiff argues that the '472 Patent recites a specific technique to solve a technological problem in computer technology: improving network service availability and reliability in virtualized environments. ECF 53 at 2.

For the '472 Patent to encompass patent-eligible subject matter, Plaintiff must identify a "specific and concrete technological advance, for example an improvement to a technological process or in the underlying operation of a machine." *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 908 (Fed. Cir. 2022)). Such an invention must be directed "to an improvement to computer functionality." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). Claims directed to "[c]ontrolling access to resources is exactly the sort of process that 'can be performed in the human mind . . .' which we have repeatedly found unpatentable." *Ericsson Inc. v. TCL Communication Technology Holdings*, 955 F.3d 1317, 1327 (Fed. Cir. 2020). Moreover, "a system of observing, analyzing, monitoring, and alerting is an abstract idea" and "can be done entirely by the human mind using pen and paper." *Neochloris, Inc. v. Emerson Process Mgmt. LLLP*, 140 F. Supp. 3d 763, 770 (N.D. Ill. 2015). Indeed, the Federal Circuit recently held abstract claims that "broadly recite generic steps of a kind we have frequently held are abstract: detecting information, generating and transmitting a notification based on the information,

1  receiving a message [], determining [], and processing information [])." *Beteiro, LLC v.*
2  *DraftKings Inc.*, 104 F.4th 1350, 1355–56 (Fed. Cir. 2024).

3      Here, the focus of the methods claimed by the '472 Patent is "monitoring" availability of a
4  first service to "detect" a reduction in availability, and then "diverting computing resources" from
5  over-provisioned, lower-priority second services to provide additional capacity for the first
6  service. ECF 53 at 3. The goal is to improve service reliability in virtualized networks by
7  reallocating and diverting computing resources without increasing hardware costs or degrading
8  performance. *Id.* At its core '472 Patent is a method for monitoring whether services are
9  available, and activating and deactivating services based on availability. *Id.* Plaintiff's reliance on
10 *SRI Int'l, Inc. v. Cisco Sys., Inc.*, to support Plaintiff's argument is misplaced. 930 F.3d 1295,
11 1303 (Fed. Cir. 2019). Unlike the claims in *SRI*, the claims here are not directed to a specific
12 improvement in computer functionality that "actually prevent[s] the normal, expected operation of
13 a conventional computer network" and thus "overrides the routine and conventional sequence of
14 events." *SRI Int'l, Inc*, 930 F.3d at 1304. The '472 Patent describes a method for monitoring and
15 routing the allocation of resources to various services depending on the services' availability.
16 ECF 53 at 3. The patent is more akin the function of controlling access to resources than an
17 alteration in the function or operation of the virtual machine or the network itself. *Id.*

18     Accordingly, claim 1 of the '472 Patent is directed to an ineligibly abstract subject matter
19 under *Alice* step one.

20     **2. Claim 6 of the '472 Patent Does Not Recite an Inventive Concept**

21     Plaintiff argues that claim 6 of the '472 Patent is patent-eligible because the claim recites
22 an inventive concept. ECF 53 at 7. Defendants argue that the allegations in the amended
23 complaint fail to show an inventive concept in the '472 Patent. ECF 55 at 5.

24     Because claim 6 of the '472 Patent fails at *Alice* step one, the Court must "search for an
25 'inventive concept,'" an element that ensures the patent "amounts to significantly more than a
26 patent upon the [abstract idea] itself." *Alice*, 573 U.S. at 217–18 (quoting *Mayo*, 566 U.S. at 72–
27 73). A claim does not become inventive by "[s]tating an abstract idea while adding the words
28 'apply it with a computer.'" *In re Killian*, 45 F.4th 1373, 1380 (Fed. Cir. 2022). "[A]t step two,

an inventive concept must be evident in the claims." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017). Moreover, the Federal Circuit recently reiterated that "the abstract idea itself cannot supply the inventive concept." *Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1380 (Fed. Cir. 2025). The court further held that the abstract idea "cannot contribute to the inventive concept" and that the "relevant inquiry is not whether the claimed invention as a whole is unconventional or non-routine, but whether the claim limitations other than the invention's use of the ineligible concept to which it was directed were well-understood, routine and conventional." *Id*. at n.11 (cleaned up).

Here, Plaintiff argues that preexisting solutions did not create capacity for the dynamic activation response by deactivating other services. *Id.* And that the combination of these inventive functions—providing an elastic solution that improves virtual machine technology and the operation of network services by enabling dynamic, policy-driven scaling in and out—was not well-known, routine, or conventional. *Id.* However, "the abstract idea itself cannot supply the inventive concept, no matter how groundbreaking the advance." *Optis Cellular Tech., LLC*, 139 F.4th at 1380 (Fed. Cir. 2025); *see also EcoFactor, Inc. v. Google LLC*, 757 F. Supp. 3d 978, 988 (N.D. Cal. 2024) ("[Plaintiff] argues that the patent improved conventional [technology systems] by applying the abstract idea of calculating and accounting for [certain data] in operating efficiency comparisons. But '[a] claim's 'use of the ineligible concept to which it is directed cannot supply the inventive concept.'" (quoting *Caselas, LLC v. VeriFone, Inc.*, No. 23-cv-1036, 2024 WL 2720092, at *3 (Fed. Cir. May 28, 2024)).

Plaintiff may not rely on the underlying abstract idea itself to plead an inventive concept, therefore, the '472 Patent does not recite an inventive concept. *Optis Cellular Tech., LLC*, 139 F.4th at 1380.

### C. Claim 1 of the '102 Patent is Invalid Under 35 U.S.C. § 101.

Plaintiff's operative complaint contains factual allegations detailing how Defendants' Accused Products infringe claim 1 of the '102 Patent. *See* FAC. Plaintiff states that the remaining dependent claims recite additional methods. FAC ¶ 39.

For the reasons discussed above, the Court addresses only claim 1 of the '102 Patent. *See* discussion *infra* Section III.B.

### 1. Claim 1 of the '102 Patent is Directed to a Patent-Ineligible Subject Matter

Claim 1 of the '102 reads as follows:

| '102 Patent |
|---|
| 1. A method comprising: |
| grouping the subnets into subnet groups based on logical properties of the subnets; |
| assigning to each network consumer those subnet groups that are accessible to that network consumer; and |
| providing for constrained selection of a particular subnet by a network consumer accomplished by way of a graphical user interface with selectable fields, wherein the constrained selection includes |
| (i) selecting a public or private type address space, |
| (ii) if applicable, selecting a gateway device from amongst those gateway devices that are accessible to the network consumer, and |
| (iii) selecting a subnet group from those subnet groups that are accessible to the network consumer, and |
| (iv) selecting a subnet mask that represents a size of the particular subnet. |

Defendants argue that the method of grouping and managing access to subnets described in the '102 Patent is a well-known business practice. ECF 43 at 11. Plaintiff argues that the '102 Patent is eligible because it is directed to a specialized and new "graphical user interface and [] back-end processing" that enables it, for improving "provisioning subnets" within network infrastructures. ECF 53 at 9.

"[C]ontrolling access to resources is exactly the sort of process that 'can be performed in the human mind, or by a human using a pen and paper,' which we have repeatedly found unpatentable." *Ericsson*, 955 F.3d at 1327 (Fed. Cir. 2020) (citation omitted). "[M]ere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology." *Credit Acceptance Corp. v. Westlake Servs*., 859 F.3d 1044, 1055 (Fed. Cir. 2017); *IBM v. Zillow Grp., Inc*., 50 F.4th 1371, 1378 (Fed. Cir. 2022)

1  (finding ineligible a patent that purportedly improved "the ability of users to identify and analyze
2  relevant data in otherwise large data sets"). "[T]he prohibition against patenting abstract ideas
3  cannot be circumvented by attempting to limit the use of [the idea] to a particular technological
4  environment." *Alice*, 573 U.S. at 222 (2014)

Subnetting refers to the technology for dividing a larger network, such as an IP address, into smaller and more manageable parts. ECF 53 at 9. Plaintiff claims that the specially programmed graphical user interface which is the subject of the '102 Patent leverages new back-end processing steps to constrain the selection of subnets during provisioning. *See* FAC ¶ 34. The Court acknowledges that claims that are "directed to an improved user interface for computing devices" and "a particular manner of summarizing and presenting information in electronic devices," have been found eligible at *Alice* step one. *See Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362-63 (Fed. Cir. 2018). However, Plaintiff's claim recites a specialized graphical user interface tool, it does not recite a specific improvement to the user interface itself. *Id.* The claim does not demonstrate that "constrained selection" for subnetting management represents a change in how the user interface itself is designed or laid out. *cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1378 (Fed. Cir. 2021) (finding ineligible a claim where "a graphical user interface ("GUI") provides the interface for the participant (i.e., a customer) to communicate with a web-based . . . system").

Accordingly, claim 1 of the '102 Patent is directed at an abstract idea.

### 2. Claim 1 of the '102 Patent Does Not Recite an Inventive Concept

Defendants argue that the method described in the '102 Patent focuses on the same "grouping" concept Plaintiff describes for step one. ECF 55 at 8. Plaintiff argues that its method of "constrained selection" recites an inventive concept. ECF 53 at 13.

"[T]he abstract idea itself cannot supply the inventive concept, no matter how groundbreaking the advance." *Optis Cellular Tech., LLC* 139 F.4th at 1380 (Fed. Cir. 2025). "Invocations of computers and networks that are not even arguably inventive are insufficient to pass the test of an inventive concept in the application of an abstract idea." *Elec. Power Grp.. LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016). The Court requires that claims be

13

1  "directed to a specific improvement in the capabilities of computing devices" for eligibility. *Core*

2  *Wireless.,* 880 F.3d at 1363 (Fed. Cir. 2018).

3        Plaintiff argues that the "invention improves upon the" "risk [of] misprovisioning" subnets

4  "with several 'constrained selection' functions that 'follow[] an organized and logical process in

5  choosing the subnet' (['102 Patent,] :56-57) that 'at each step of the way . . . intelligently

6  constrain[s] or limit[s]' the 'choices available' the IT administrator." ECF 53 at 13. However,

7  Plaintiff's alleged inventive concept only describes the underlying ineligible abstract idea itself,

8  which is insufficient at *Alice* step two. *Optis Cellular*, 139 F.4th at 1380.

9        Accordingly, claim 1 of the '102 Patent does not recite an inventive concept.

**D.   Claims 27 and 28 of the '931 Patent and Claims 1 and 5 of the '751 Patent Are Invalid Under 35 U.S.C. § 101.**

Plaintiff's operative complaint contains factual allegations detailing how Defendants' Accused Products infringe claims 27 and 28 of the '931 Patent and claims 1 and 5 of the '751 Patent. *See* FAC.

For the reasons discussed above, the Court addresses only claims 27 and 28 of the '931 Patent and claims 1 and 5 of the '751 Patent. *See* discussion *infra* Section III.B.

**1.   1. Claims 27 and 28 of the '931 Patent and Claims 1 and 5 of the '751 Patent are Directed to a Patent-Ineligible Subject Matter**

Claims 27 and 28 of the '931 Patent and Claims 1 and 5 of the '751 Patent are:

| '931 Patent | '751 Patent |
|---|---|
| 27. A method for enabling node timestamp time synchronization with a master clock step change employing timestamps received at a single node, comprising:<br><br>receiving a first timestamp associated with a first offset and a second timestamp associated with a second offset;<br><br>calculating a compensated timestamp based in part of the first timestamp and associated offset and the second offset;<br><br>determining if a step change has occurred; and | 1. A system that enables time synchronization, comprising:<br><br>a timestamp component that captures timestamps and offsets from at least one network node; and<br><br>a time synch component that identifies step changes to at least one master clock and synchronizes a local clock time of the at least one network node with the identified step change.<br><br>4. The system of claim 1, each network node maintains a local time independent |

14

| | |
|---|---|
| selectively updating the second timestamp and associated second offset if a step change has occurred.<br><br>28. The method of claim 27, determining if a step change has occurred further comprising:<br><br>comparing the second offset to the first offset; and<br><br>determining a difference between the first offset and the second offset. | from other nodes and all nodes maintain a common understanding of system time.<br><br>5. The system of claim 4, the time synch component further determines whether to adjust local clocks to system time based on data from the timestamp component. |

Defendants argue that the concept of accounting for step changes in time when synchronizing clocks is an abstract idea. ECF 43 at 14. Plaintiff argues that the claimed invention describes a concrete improvement to computing technology. ECF 53 at 14.

In *Entropic*, a district court found claims directed to "the abstract idea of synchronizing clocks based upon the difference between actual and anticipated timing" to be ineligible. *Entropic Commc'ns, LLC v. DISH Network Corp.*, 767 F. Supp. 3d 1043, 1049 (C.D. Cal. 2025). Indeed, patents directed to synchronization are typically found ineligible. *See Implicit, LLC v. Ziff Davis, Inc.*, 2023 WL 4366351, at *3 (C.D. Cal. July 3, 2023) (finding ineligible a patent directed to "synchronizing data between computer directories").

Here, Plaintiff avers that the patent is directed at a specific and technical problem because it recites a method for improving "time synchronization technology" that "compensat[es] for system step changes across a network of distributed devices in order to accurately represent time." ECF 53 at 13. However, Plaintiff does not demonstrate that the claimed invention does anything more than the abstract synchronization process described above. *Entropic*, 767 F. Supp. 3d at 1049.

Accordingly, claims 27 and 28 of the '931 Patent and claims 1 and 5 of the '751 Patent are directed at patent-ineligible ideas.

### 2. Claims 27 and 28 of the '931 Patent and Claims 1 and 5 of the '751 Patent Do Not Recite an Inventive Concept

Defendants argue that the method of compensating for step changes in time is a conventional practice that can be performed using basic math and is therefore not inventive. ECF

43 at 17. Plaintiff argues that the time synchronization technology described in the '931 and '751 Patents accounts for a solution to the master clock "step change" problem that existing technologies did not address. ECF 53 at 17.

In *Entropic*, the synchronization system at issue was found to lack an inventive concept where the claims disclosed only "a simple mathematical calculation based upon the difference between estimated and actual arrival times of data packets sent by nodes in the network." *Entropic*, 767 F. Supp. 3d at 1060. The court in *Entropic* similarly found no inventive concept in claims directed to "exchanging data between nodes to synchronize clock times." *Id.* at 1058.

Plaintiff argues that an inventive concept is recited because the "claimed invention accounts for 'step changes' by calculating a compensated timestamp based in part on the first timestamp, associated offset, and the second offset; determining if a 'step change' has occurred; and selectively updating the second timestamp and associated second offset if a 'step change' has occurred—which is precisely what the claims recite." ECF 53 at 17; *see also* FAC ¶¶ 64–69, 72–76, 78–83, 86–91. Plaintiff argues that Defendants fail to address the well-pleaded allegations that Plaintiff's asserted claims are directed to technical improvements in non-conventional ways. ECF 53 at 18. However, a district court is not required to credit conclusory statements regarding whether the claimed steps were well-known, routine, and conventional in the context of a motion to dismiss. *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 706 (Fed. Cir. 2023). And while Plaintiff does clearly articulate the characteristics that Plaintiff alleges are inventive, *see* FAC ¶¶ 64–69, 72–76, 78–83, 86–91, the described characteristics apply the abstract idea of accounting for step changes in time when synchronizing clocks to generic computer hardware which does not provide an inventive concept. *PlanetID, LLC v. Digify, Inc.*, No. 19-cv-04615, 2021 WL 567371, at *7 (N.D. Cal. Jan. 12, 2021) ("The asserted claims' recitation of generic computer and network components does not provide the inventive concept required at step two.").

Accordingly, the '931 and '751 Patents do not address inventive concepts.

**E.    Claims 1 of the '912 Patent is Invalid Under 35 U.S.C. § 101.**

Netflix's operative complaint contains factual allegations detailing how Defendants' Accused Products infringe claim 1 of the '912 Patent.

16

For the reasons discussed above, the Court addresses only claim 1 of the '912 Patent. *See* discussion *infra* Section III.B.

### 1. Claim 1 of the '912 Patent is Directed to a Patent-Ineligible Subject Matter

Claim 1 is

| '912 Patent |
|---|
| 1. A method of synchronizing node clocks within a plurality of nodes on a network including a time master node having a master clock and including at least one time slave node, the method comprising: |
| connecting the plurality of nodes through a full duplex Ethernet network with a daisy-chain connection of the nodes to each other; |
| transmitting a time synchronization message frame from one of the plurality of nodes to a second one of said plurality of nodes, the time synchronization message frame having a timestamp field according to IEEE 1588 standard and a checksum field and a cyclic redundancy checking code; |
| at a given one of the plurality of nodes between the first and second nodes: |
| (i) receiving the time synchronization message frame; |
| (ii) reading a timestamp value of a timestamp field of the time synchronization message frame; |
| (iii) near a time of retransmission of the time synchronization message frame from the given node, adjusting the read timestamp value in the timestamp field by an amount of delay between time of reception and a time of the retransmission to produce a corrected timestamp value; |
| (iv) writing the corrected timestamp value over the timestamp value of the timestamp field of the time synchronization message frame; |
| (v) adjusting a checksum value in the checksum field and adjusting the cyclic redundancy checking code of the time synchronization message frame to account for adjusting the timestamp value; and |
| (vi) transmitting the time synchronization message frame from the given node; and providing a highest priority to process and forward time synchronization message frames and lower priorities to process and forward other types of message frames. |

Defendants argue that the '912 patent, similar to the '931 and '731 Patents, is directed at synchronizing clocks and therefore addresses patent-ineligible subject matter. ECF 43 at 21. Plaintiff argues that the '912 Patent is directed to improving the problem of timing precision in Ethernet systems. ECF 53 at 18.

"[C]alculating a delay" is something that "can be performed by a human being using a pen and paper" and "without more, does not take the claim out of the abstract realm." *Entropic*, 767 F. Supp. 3d at 1057-61 (finding clock synchronization patent ineligible). Moreover, "claims directed to sending and receiving data are abstract." *Id.*; *see also Affinity Labs of Tex. v. DIRECTV, LLC*, 838 F.3d 1253, 1261 (Fed. Cir. 2016)) (finding claims directed to "the conveyance and manipulation of information" abstract); *see also Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x. 529, 537 (Fed. Cir. 2020) (finding claims directed to "'[f]ormatting' data, 'transmitting' data, and 'retrieving' data" abstract).

Here, the '912 Patent claims adjust a timestamp in "real-time" to compensate for delay and putting the corrected timestamp value into an existing message. ECF 53 at 20. Plaintiff argues that "the '912 Claims recite a specific implementation that improves the functionality of an Ethernet network node itself—detecting network delays and modifying a data frame's timestamp "on the fly" using specialized "hardware logic" while "adjusting the frame's checksum and CRC to maintain data integrity." *Id.* Plaintiff argues that the claimed invention reduced latency of the communication system, thereby providing an "improvement to the functionality of the communication system itself." *Uniloc USA, Inc. v. LG Electronics USA, Inc.*, 957 F.3d 1303, 1309 (Fed. Cir. 2020). However, the '912 claims do not improve latency, but calculates how much latency occurred, and adjusts the timestamp to reflect this delay. ECF 53 at 19. Plaintiff says that the '912 Patent reduces the effect of time delay through a new method of network node functionality that more quickly corrects the "timestamp [] in time synchronization messages 'on the fly'" and transmits the time synchronization message with the "highest priority" to avoid any further time delays. ECF 53 at 21. Plaintiff's description of the time adjustment method recited in the claims—adjusting the read timestamp value in the timestamp field by an amount of delay—is nothing more than basic arithmetic that does not remove the claim from the abstract realm. *Entropic*, 767 F. Supp. 3d at 1049. The Court finds that the '912 Patent seeks to patent an ineligible "abstract idea of synchronizing clocks based upon the difference between actual and anticipated timing." *Id.*

Accordingly, the '912 Patent is directed at patent-ineligible subject matter.

18

### 2. Claim 1 of the '912 Patent Does Not Recite an Inventive Concept

Defendants argue that adjusting a timestamp to compensate for delay is not unconventional. ECF 43 at 23. Plaintiff argues that the '912 Patent recites an inventive concept in the unconventional use and arrangement of a number of processes—including "adjusting the read timestamp value" "near a time of retransmission," "writing the corrected timestamp value over" the old one, and simultaneously "adjusting a checksum value . . . and adjusting the cyclic redundancy checking code" to maintain data integrity before transmitting the modified frame. ECF 53 at 22–23.

As the *Entropic* court held, neither "a simple mathematical calculation based upon the difference between estimated and actual arrival times of data packets sent by nodes in the network" nor "adjusting the local clock times of the one or both of the nodes based on estimated propagation delay" demonstrated any unconventionality. *Entropic*, 767 F. Supp. 3d at 1060–61 (C.D. Cal. 2025). A process which relies on generic computer equipment to perform the claimed abstract idea of clock synchronization is not patent eligible. *Elec. Commc'n Techs*., 958 F.3d at 1183. "[S]imply appending conventional steps specified at a high level of generality to an abstract idea does not make that idea patentable." *Affinity Labs*, 838 F.3d at 1263.

One step of the patent accounts for delay and adjust timesteps. ECF 53 at 21. As stated above, this process is not unconventional. *Entropic*, 767 F. Supp. 3d at 1060-61 (C.D. Cal. 2025) (finding neither "a simple mathematical calculation based upon the difference between estimated and actual arrival times of data packets sent by nodes in the network" nor "adjusting the local clock times of the one or both of the nodes based on estimated propagation delay" demonstrated any unconventionality). The other steps, which relate to receiving and transmitting the data packets and adjusting the checksums, recite methods which reflect the conventional IEEE 1588 protocol and standard Internet protocols; the additional steps do not add an inventive concept. *See* '912 Patent at 4:40-42 (incorporating IEEE 1588 standard by reference); *Checksum Ventures, LLC v. Dell Inc*., 412 F. Supp. 3d 906, 916 (N.D. Ill. 2019) (a patent that "endorses using 'conventional algorithms' to compute checksums[] effectively conced[es]" the lack of an inventive concept). Plaintiff does not identify an unconventional use or feature of the algorithm in the '912 Patent. *Id.*

19

Accordingly, the '912 Patent does not address inventive concepts.

## IV. CONCLUSION

For the reasons discussed, the claims for which Netflix has provided factual allegations supporting its claims of infringement are invalid because they are directed to patent-ineligible concepts under 35 U.S.C. § 101.

Dismissal is with prejudice and without leave to amend as to Defendants' alleged infringements of claim 6 of the '472 Patent, claim 1 of the '102 Patent, claims 27 and 28 of the '931 Patent, and claims 1 and 5 of the '751 Patent, and claim 1 of the '912 Patent.

Dismissal is with leave to amend as to alleged infringements of claims 1–5 and 7–15 of the '472 Patent, claims 2–17 of the '102 Patent, claims 1–26 and 29–32 of the '931 Patent, claims 2–4 and 6–20 of the '751 Patent, and claims 2–26 of the '912 Patent.

Any amended complaint shall be filed within 21 days of this order, November 19, 2025. Fed. R. Civ. P. 15.

IT IS SO ORDERED.

Dated: October 29, 2025

TRINA L. THOMPSON
United States District Judge